**UNITED STATES, Appellee,**

v.

**Savoth PHATH, Defendant, Appellant.**

**No. 97-2213.**

United States Court of Appeals, First Circuit.

Heard April 10, 1998.

Decided May 20, 1998.

---

Thomas G. Briody, argued for Defendant, Appellant.

Margaret E. Curran, Assistant United States Attorney, with whom Kenneth P. Madden, Assistant United States Attorney, and Sheldon Whitehouse, United States Attorney, were on brief, for Appellee.

Before TORRUELLA, Chief Judge, STAHL, Circuit Judge, and LYNCH, Circuit Judge.

STAHL, Circuit Judge.

Following a one-day trial defendant-appellant Savoth Phath was convicted of bank fraud. *See* 18 U.S.C. § 1344. He appeals his conviction on three grounds: erroneous admission of opinion evidence, erroneous jury instructions, and an improper sentence adjustment for more than minimal planning. We affirm the conviction but vacate the sentence and remand for re-sentencing.

I.

On June 5, 1996, Savoth Phath deposited two counterfeit checks into his savings account at a branch of Fleet Bank in Providence, Rhode Island. Bank surveillance cameras recorded the transaction. One check for $4,340.75, payable to Mao Mich, was drawn on the Fleet bank account of The Worcester Company; the other check for $1,150, payable to Thai Sey, was drawn on the Fleet Bank account of Main Street Tex-

tiles. The next day, Phath withdrew $5,000 from the same savings account.

On March 7, 1997, after being arrested by Secret Service agents, Phath waived his privileges under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and related the following facts to the agents. Phath explained that a stranger had approached him at the Foxwoods Casino in Connecticut, and asked him if he had a bank account. After Phath answered yes, the stranger offered him an unspecified amount of money to cash some checks. When Phath agreed, the stranger gave him six checks, and then asked if Phath knew anyone else who would cash checks. Phath again said yes. He subsequently deposited the two checks described above in his own account, gave two to someone he knew as "Samman," and two to someone he did not know. The day after he deposited the checks, Phath withdrew' $5,000 from his account, collected money from the other two individuals, and gave the total sum to the stranger who, in turn, paid Phath $500.

## II.

### A. Admission of Evidence

 Phath asserts that the district court abused its discretion by admitting a Secret Service case agent's expert opinion testimony because the testimony lacked foundation. The agent testified that he knew of cases in which other defendants had deposited counterfeit checks into their bank accounts. In Phath's view, this testimony undermined the main theory of his defense: that his use of his own bank account to cash the checks was evidence that he did not know that the checks were counterfeit. We disagree.

During the prosecutor's redirect examination of the agent, the district court sustained objections to the following two questions: (1) "And when you first learned that [the checks were deposited into an account that was in the Defendant's name] during the course of the investigation, did that strike you in any way?"; (2) "When you first learned that during the course of the investigation, did you have any thoughts on that at all?" The court then overruled an objection to the next ques-

tion, "When you first learned it during the course of the investigation, did you find that unusual at all?" After the agent responded that he "had seen that done before in other cases," the court denied Phath's motion to strike the testimony.

We reject Phath's claim that the district court improperly admitted expert opinion evidence under Fed.R.Evid. 702. First, we doubt whether the third question even asked for an opinion. Instead, we interpret the question as calling for a fact response. Unlike the first two questions, the third question asked the agent whether he found the deposits unusual, implying that the answer should be based on the agent's experience, not his opinion. In fact, the agent's response—"I had seen that done before in other cases"—confirms that the agent understood that the prosecutor was questioning the agent's experience.

Even assuming that Phath correctly characterizes the evidence as inadmissible expert opinion evidence, we are confident that the error is harmless. *See Molloy v. Blanchard*, 115 F.3d 86, 93 (1st Cir.1997) (holding that the standard for harmless error is whether the error swayed judgment); *see also Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The evidence against Phath was strong. At most, the agent's statement conveyed that other people have deposited counterfeit checks into their own accounts, a fact that does not dissipate the force of Phath's defense that he did not know the checks were counterfeit.

### B. Jury Instructions

 Phath asserts that the district court erroneously instructed the jury and, in doing so, prejudiced his defense. The district court instructed the jury that the government was required to prove beyond a reasonable doubt:

One, that the Defendant engaged in a scheme or artifice to defraud a financial institution or that he made false statements or misrepresentations to obtain the money or other property from a financial institution by false pretenses; two, that the financial institution was then federally insured; and three, that the Defendant acted knowingly.

The court further instructed the jury that the phrase " 'false statements and misrepresentations' means any statement or assertion which concerns a material fact and which, at the time it was made, was either known to be untrue or was made with reckless indifference to its truth or falsity."

Phath objects to the definition because he believes it was similar to a "willful blindness" instruction yet was unaccompanied by a warning that a defendant cannot be convicted based on negligence. Phath further argues that a warning instruction was critical because he, reasonably, did not know that the checks were counterfeit. The court's instruction, he contends, likely led the jury to confuse reckless indifference with mere negligence. We reject this argument.

█ "We review allegedly erroneous jury instructions *de novo* to determine [whether] the instructions, taken as a whole, show a tendency to confuse or mislead the jury with respect to the applicable principles of law." *United States v. Fulmer*, 108 F.3d 1486, 1494 (1st Cir.1997) (citing *Tatro v. Kervin*, 41 F.3d 9, 14 (1st Cir.1994)).

Assuming, arguendo, that the court's definition of "false statements and misrepresentations" was a misstatement of law, the instructions, in their entirety, nonetheless accurately reflected the elements of 18 U.S.C. § 1344. The challenged instructions were a small part of the court's instructions regarding intent. In addition to the definition cited above, the court stated "False statements and misrepresentations include not only actual lies, but half-truths as well. [They] also include ... any false pretense, promise or knowing concealment of facts which are material...."

Further, the district court defined the third element, knowing conduct, instructing:

> The Government must prove beyond a reasonable doubt ... that the Defendant acted knowingly and with specific intent to defraud. An act is done knowingly if it is done voluntarily and intentionally and not because of ignorance, mistake or accident. To act with intent to defraud means to act knowingly and with the intention or the purpose to deceive or cheat. An intent to defraud is accompanied ordinarily by a desire or a purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some purpose. Thus, the Government must prove that the Defendant knew that scheme to defraud a financial institution existed and that he willfully participated in that scheme.

Considering the court's entire definition of "false statements and misrepresentations" and its careful exposition of the intent element, we find that even if the challenged sentences were erroneous, they were not prejudicial.

### C. More than Minimal Planning

█ Phath also challenges the two-level increase imposed pursuant to U.S.S.G. § 2F1.1(b)(2) for more than minimal planning. The district court's judgment that an offense involves more than minimal planning is a factual finding that we overturn only if it is clearly erroneous. *See United States v. Rust*, 976 F.2d 55, 57 (1st Cir.1992). After reviewing the transcript of the sentence hearing, we conclude that the court's decision was clearly erroneous.

The Sentencing Guidelines Commentary describes "more than minimal planning" as:

> more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.... "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. U.S.S.G. § 1B1.1, Application Note 1(f).

In finding more than minimal planning, the district court looked at the "totality of the circumstances and the scheme itself." According to the court,

> The defendant readily agrees to participate himself and, indeed, recruits two others, by his own admission. So not only does he go to the bank twice, he recruits two others. He takes the check from Gino[, the stranger,] to hand off to the two others and then collects the proceeds for Gino, again, by

his own admission, from those two that he recruited. Taking all of that into account, this is not an offense in its simplest terms. It has several layers of intricacy which are designed to conceal the offense itself.

■ The government urges us to uphold the sentence enhancement because Phath's acts were not purely opportune.[1] However, we do not need to decide whether Phath's acts were purely opportune because Phath's acts were not "repeated acts over a period of time," as described in the first clause of the guideline section relied upon by the government. There is no argument that Phath took "significant affirmative steps ... to conceal the offense," which would also trigger the guideline.

Phath's crime was simple and short-lived. That Phath went to the bank two times to complete the simple acts of depositing checks and withdrawing funds does not strike us as a complication of the basic crime. Allowing a day to lapse between deposit and withdrawal allows the bank adequate time to credit the account. In total, Phath began and completed the crime within forty-eight hours, a relatively short period of time.

The only plausible reason for the enhancement was Phath's recruitment of two others to negotiate four of the six counterfeit checks. Taking Phath's story at face value, which we do because there is no contradictory evidence, the stranger asked Phath to recruit the others when he recruited Phath. Phath complied with the stranger's request as part of the same criminal act during the same short time period. Guided by the sentencing guidelines and circuit case law, we do not interpret Phath's acts to involve *more* than minimal planning.

The application notes to the sentencing guidelines provide an illustration of minimal planning and more than minimal planning in the case of embezzlement. "[A] single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would con-

stitute more than minimal planning, as would several instances of taking money, each accompanied by false entries." *Id.* Phath's acts were more similar to the simple false book entry than to the enhanced crime as they would have been had he created the counterfeit checks or made repeated agreements with the stranger.

In addition, Phath's crime is not comparable to those for which we have previously upheld sentence enhancements for more than minimal planning. *See United States v. Boots*, 80 F.3d 580, 595 (1st Cir.1996) (finding no clear error in light of fact that defendants had engaged in multiple acts over a several month period); *United States v. Santiago–Gonzalez*, 66 F.3d 3, 7 (1st Cir.1995) (finding no clear error where defendant had made seven separate "false entries" for the purpose of defrauding an insurance company over several months); *United States v. Beauchamp*, 986 F.2d 1, 5 (1st Cir.1993) (finding no clear error where defendant had engaged in an extensive cover-up plan which included lying to investigators and recruiting others to lie to them); *Rust*, 976 F.2d at 57 (1st Cir. 1992) (finding no clear error where defendant had submitted 23 intricately altered vouchers over four years). Compared to the crimes outlined in these cases, Phath's crime was short-term and simple.

Similarly, other circuits have applied the enhancement only to crimes involving repeated acts over a period of time. *See, e.g., United States v. Mau*, 45 F.3d 212, 214 (7th Cir.1995) (finding no clear error where defendant had kited a huge volume of checks over seven months); *United States v. Brach*, 942 F.2d 141, 145 (2d Cir.1991) (finding no clear error given defendant's several-month scheme that involved securing a large monetary advance from the defrauded party); *United States v. Lennick*, 917 F.2d 974, 978–80 (7th Cir.1990) (holding that the enhancement is usually applied "to factual scenarios involving clear examples of repeated complex criminal activity," and that a false statement to a federal agent and other cover-up activity were sufficient for enhancement); *United States v. Bakhtiari*, 913 F.2d 1053, 1063 (2d Cir.1990) (finding no clear error where defen-

---

1. Conduct is "purely opportune" if it is spur of the moment conduct, intended to take advantage of a sudden opportunity. *See United States v. Gregorio*, 956 F.2d 341, 343 (1st Cir.1992).

dant, impersonating a State Department employee, had numerous contacts with broker), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991).

Although our research uncovered no case in which we overturned a sentence enhancement for more than minimal planning, other circuits have overturned such enhancements for more or equivalent planning than that engaged in by Phath. *See United States v. Maciaga,* 965 F.2d 404 (7th Cir.1992) (overturning sentence enhancement of a security guard who stole money on two occasions after deactivating bank alarm). Indeed, Phath's crime seems comparable to the crimes in two cases in which appeals courts overturned the enhancement. *United States v. Cropper,* 42 F.3d 755 (2d Cir.1994) (holding that the enhancement was not warranted where defendant drove up to warehouse in taxicab that was too small to carry stolen boxes, delaying defendant in commission of crime); *United States v. Bean,* 18 F.3d 1367 (7th Cir.1994) (overturning the enhancement where defendant had engaged in one cycle of check kiting and then attempted to obtain loan to pay bank).

Almost all crimes involve some degree of planning. We do not find the amount of planning here sufficient to justify the enhancement for more than minimal planning.

We therefore *affirm* Phath's conviction and *remand* for resentencing consistent with this opinion.