# United States Court of Appeals
## For the First Circuit

No. 17-1104

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ IGNACIO GORIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]
[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and Levy, District Judge.*

Robert B. Mann, with whom Robert B. Mann Law Office was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Stephen G. Dambruch, Acting United States Attorney, was on brief, for appellee.

November 27, 2017

---

* Of the District of Maine, sitting by designation.

**SELYA**, **Circuit Judge**.  Defendant-appellant José Ignacio Goris, convicted of a drug-trafficking offense in the aftermath of a government sting, strives to convince us that he should be granted a new trial based on denied discovery and alleged instructional error.  We are not persuaded: after articulating the standard for materiality pertaining to discovery in criminal cases (a matter of first impression in this circuit), we uphold both the district court's denial of the requested discovery and its jury instructions.  Accordingly, we affirm.

## I.  BACKGROUND

We briefly rehearse the relevant facts and travel of the case.  In the late spring and summer of 2014, the defendant was the target of an elaborate sting operation undertaken by the Drug Enforcement Administration (DEA).  Believing himself to be communicating with a representative of a "reputable" drug trafficker (an oxymoron of the first order), the defendant had extensive discussions with an undercover DEA agent regarding his purchase of one to five kilograms of cocaine.  The "reputable" drug trafficker had previously provided the defendant with subpar product.  Once bitten, twice shy, so the defendant dealt cautiously with the trafficker's supposed representative (the undercover agent).  While the defendant repeatedly told the undercover agent that his goal was to purchase from one to five kilograms of

cocaine, he insisted that he could not make a large purchase without first testing the product.

At a meeting in the agent's car, the defendant explained that he wanted to take one kilogram of cocaine and test it. If the sample proved satisfactory, he would then consummate the purchase. Reaching back behind the seat, the defendant handled a dummy kilogram that had been placed there by the agent and said, "that feels good." Later in the day, the two men met inside a home improvement store and made arrangements for the final handoff: the defendant would remove a brick of cocaine (approximately one kilogram) from the agent's car and take it home for testing.

The test never came to pass. After the defendant retrieved the brick (the dummy kilogram, as matters turned out) from the agent's car, he was arrested on the spot. A federal grand jury subsequently charged him with attempting to possess 500 grams or more of cocaine with intent to distribute. See 21 U.S.C. § 841(a)(1).

In the course of routine pretrial discovery, the government produced materials making clear its intention to offer at trial the recorded conversations between the defendant and the undercover agent, including the conversation that occurred on the day of the defendant's arrest inside the home improvement store (the August 14 recording). The defendant moved for additional discovery related to the August 14 recording, but the district

court (Lisi, J.) denied his discovery motion on two grounds, finding that materiality had not been shown and that the information sought was proprietary in nature. For reasons not relevant here, the case was reassigned to a different trier and, immediately before the start of trial, the defendant effectively renewed his discovery motion. The district court (McConnell, J.) refused to revisit the earlier ruling.

At trial, the defense sought to persuade the jury that the defendant never actually intended to purchase the cocaine but, rather, merely wanted a sample of the drug for testing. The defense also suggested that the August 14 recording had been manipulated by the government and could not be considered credible. The jury was unconvinced: it found that the defendant had attempted to possess 500 grams or more of cocaine with intent to distribute. Judge McConnell imposed a five-year term of immurement and this timely appeal followed.

## II. ANALYSIS

In this venue, the defendant, represented by new appellate counsel, advances two claims of error. First, he argues that the district court abused its discretion in denying his motion to examine the original of the August 14 recording and the software that generated and stored it. Second, he finds fault with the district court's instructions regarding the jury's duty to find, beyond a reasonable doubt, that the defendant had attempted to

possess 500 grams or more of cocaine with intent to distribute. We discuss these claims of error sequentially.

## A. Discovery.

We begin with the defendant's plaint that the district court improperly denied his request for additional pretrial discovery. That request was brought under Federal Rule of Criminal Procedure 16, and a district court's determinations under Rule 16 are reviewed for abuse of discretion. See United States v. Correa-Alicea, 585 F.3d 484, 493 (1st Cir. 2009). We caution, though, that an abuse of discretion will not be found in this context "unless the objecting party can show prejudice." United States v. Chiaradio, 684 F.3d 265, 276 (1st Cir. 2012) (citing United States v. Spinosa, 982 F.2d 620, 631 (1st Cir. 1992)).

In criminal cases, standard types of discovery are routinely exchanged shortly after the arraignment, without the necessity of any motion. See Fed. R. Crim. P. 16(a)-(b); D.R.I. R. Cr. 16. Where circumstances warrant, however, a defendant may seek additional discovery. To this end, Rule 16 provides that, upon a defendant's request, "the government must permit the defendant to inspect . . . data, . . . tangible objects, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and "the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The defendant, as the moving party, bears the burden of showing

materiality.  See United States v. Carrasquillo-Plaza, 873 F.2d 10, 12 (1st Cir. 1989).

Although our court has not yet defined "materiality" in this context, we do not write on a pristine page.  The courts of appeals have displayed remarkable uniformity in concluding that it is not enough that what is sought "bears some abstract logical relationship to the issues in the case."  United States v. Ross, 511 F.2d 757, 762 (5th Cir. 1975).  Rather, a showing of materiality requires "some indication" that pretrial disclosure of the information sought "would have enabled the defendant significantly to alter the quantum of proof in his favor."  Id. at 763; accord United States v. Caro, 597 F.3d 608, 621 (4th Cir. 2010); United States v. Jordan, 316 F.3d 1215, 1251 (11th Cir. 2003); United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996); United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991); United States v. Marshall, 532 F.2d 1279, 1285 (9th Cir. 1976). This significant alteration may take place in a myriad of ways, such as "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (citations omitted).

In order to uphold a district court's denial of a request for additional discovery, we do not demand epistemological certainty that no discoverable information was withheld from the

defendant.  See United States v. Rosario-Peralta, 199 F.3d 552, 559 (1st Cir. 1999).  If, say, a defendant's discovery request is grounded in a speculative theory, a district court's decision to deny that request is not an abuse of discretion.  See id.

Here, the defendant premised his request for additional discovery on the notion that the government had doctored or otherwise manipulated the recorded conversations supporting its case (and, specifically, that the August 14 recording had been edited).  The district court prudently convened an evidentiary hearing to give the defendant an opportunity to put some flesh on this bare-boned allegation.  At the hearing, defense counsel introduced expert testimony from a former law enforcement officer that, based on his experience with recording technology, the moment when the background noise fell to zero in the August 14 recording might suggest that the recording had been modified.  On cross-examination, though, the witness's experience with recording technology proved to be of little value: despite his years in the field, he was unfamiliar with the type of recording technology employed in this case and had never used that technology.

This lack of familiarity was a critically important datum.  As explained in an affidavit submitted by the government in the district court, the recording system used in this case allowed agents to record communications digitally on a secure, web-based platform, which the recording officer accessed through

- 7 -

a cellular connection. Once a recording was initiated, a unique file would be created in the database. This file could be accessed for playback through a web-based platform, but could not be deleted or modified. That the recording technology relied on cellular transmissions left it at the mercy of the strength of the cellular signal and, thus, explained the poor quality of the resulting recordings (including the background noise falling to zero at times).

Nor was the expert's lack of familiarity the only infirmity in the defendant's proffer. At the hearing, the defense offered no specific evidence of what the defendant purportedly had said in the "missing" portions of the August 14 recording. This gap in the proffer is telling because the defendant was available to testify at the discovery hearing and presumably could have supplied the missing information.

Viewed against this backdrop, the district court hardly can be faulted for denying the discovery request. With the district court's endorsement of the credibility of the government's affidavit, the undermining of the defense's expert testimony, and the absence of any attempt to fill in the purportedly missing portion of the recorded conversation, it cannot plausibly be said that the district court abused its discretion in concluding that the requested discovery would not have tipped the balance on any relevant issue. Put another way,

the defendant failed to provide some indication that allowing the discovery request "would have enabled [him] significantly to alter the quantum of proof in his favor."[1]  Ross, 511 F.2d at 763. Consequently, the district court's determination that the defendant had failed to show materiality was well within the encincture of its discretion.[2]  See id. at 762; see also Rosario-Peralta, 199 F.3d at 559 (explaining that when an appellant does "little more than speculate" as to what his discovery request may yield, an appellate court "simply cannot hold that the district court abused its discretion" in denying the request).

## B.  Jury Instructions.

The defendant's second claim of error implicates the district court's instructions regarding the jury's duty to determine, beyond a reasonable doubt, whether the defendant

---

[1] The defendant claims that he should have at least been given access to the original version of the August 14 recording stored in the database so that he could compare it to the copy he had received from the government.  But granting this request in the absence of some indication of tampering would be highly unorthodox: under Rule 16, a defendant has no absolute right, on demand, to require the court to help him independently confirm the integrity of materials produced in discovery.  In the case at hand, we are satisfied that the district court did not abuse its discretion when it denied even this limited request based on its acceptance of the government's affidavit indicating that the file could not have been edited.

[2] Since we conclude that the district court did not abuse its discretion in ruling that the defendant failed to show materiality, we need not address the district court's alternative holding that the additional discovery should be denied because the defendant's request involved the production of proprietary information.

attempted to possess at least 500 grams of cocaine with intent to distribute. The importance of the drug-quantity finding cannot be overstated: it triggered a mandatory minimum sentence of five years. See 21 U.S.C. § 841(b)(1)(B).

In the context of jury instructions, a preserved claim of error alleging that the judge gave the jury a faulty interpretation of the law is normally reviewed de novo. See United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012). In contrast, a preserved claim of error alleging that the judge did not adequately explain the law or explained it in confusing terms is normally reviewed for an abuse of discretion. See United States v. Ranney, 298 F.3d 74, 79 (1st Cir. 2002). Unpreserved objections of either stripe are reviewed only for plain error. See United States v. Deppe, 509 F.3d 54, 58 (1st Cir. 2007).

Although these nuanced standards of review are sometimes difficult to apply, we are spared any such difficulty here. The government has agreed, at least for argument's sake, both that the defendant's claim of instructional error was preserved and that appellate review of that claim is de novo. We proceed accordingly.

Jury instructions are meant to "furnish a set of directions composing, in the aggregate, the proper legal standards to be applied by lay jurors in determining the issues that they must resolve in a particular case." United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995). A reviewing court is tasked with

examining whether those instructions, "taken as a whole, show a tendency to confuse or mislead the jury with respect to the applicable principles of law." United States v. Phath, 144 F.3d 146, 149 (1st Cir. 1998) (quoting United States v. Fulmer, 108 F.3d 1486, 1494 (1st Cir. 1997)).  So long as that standard is satisfied, the district court's choice of phrase is "largely a matter of discretion."  DeStefano, 59 F.3d at 2.

In order to convict the defendant, the jury had to find beyond a reasonable doubt that he attempted to possess 500 grams or more of cocaine with the intent to distribute.  The defendant concedes that, at several points during its jury instructions, the district court accurately delineated these requirements.  But in the defendant's view, these correct statements were obscured beyond redemption by two other statements that the district court made.  We turn to these other statements.

To begin, the district court told the jury:

> For you to find Mr. Goris guilty of this crime, you must be convinced that the Government has proven each of the following things beyond a reasonable doubt: First, that on August 14th, 2014, Mr. Goris attempted to possess 500 grams or more of cocaine; second, that Mr. Goris did so knowingly and intentionally; and third, that he did so with specific intent to distribute cocaine over which he had actual or constructive possession.  Now, it's not necessary for you to be convinced that Mr. Goris actually delivered the cocaine to someone else or that he made any money out of the transaction.  It is enough for the government to prove beyond a reasonable doubt

- 11 -

> that he attempted to possess what he believed
> was cocaine and that he intended to transfer
> it or some of it to someone else.

The defendant complains that the last sentence in this passage makes no mention of the need to prove that he had attempted to possess 500 grams or more of cocaine.

This plaint lacks any semblance of merit. The sentence complained of was plainly an elaboration on the preceding instruction provided by the court. To require a trial court to bloat each statement in a jury instruction by incorporating within it all the details of the charged offense is to deny the jury not only the clarity of properly segmented instructions but also the benefits of proper syntax. We discern no error.

The second statement upon which the defendant harps occurred in a passage in which the district court told the jury:

> Let me finally now define knowledge of the controlled substance. The Government must prove that the offense involved a particular type and quantity of drug and that Mr. Goris knew, believed, or intended that the offense involved 500 grams or more of cocaine. However, the Government does not have to prove that Mr. Goris knew, believed or intended that he was distributing or attempting to possess with intent to distribute that particular drug type or that particular quantity. However, the Government must prove beyond a reasonable doubt that Mr. Goris knew, believed or intended that the offense involved 500 grams or more of cocaine.

The defendant spotlights the third sentence in this passage, arguing that it "completely undercuts" the court's correct instruction about the government's burden of proving the offense.

We do not agree. Read in context, the third sentence was likely an attempt by the district court to clarify for the jury that the government did not have to prove any exact drug quantity (say, 525 grams) beyond a reasonable doubt. In the last analysis, though, we need not decide whether this single sentence, read apart from the rest of the court's charge and stripped bare of context, might be erroneous. Jury instructions must be read as a whole, not in some sort of splendid isolation. See United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014). Thus, a single sentence in a court's jury instructions cannot be yanked from its contextual moorings and construed in a vacuum. See United States v. Gomez, 255 F.3d 31, 39 (1st Cir. 2001) (rejecting claim that single sentence in otherwise "meticulous" instruction constituted error and explaining that claim "focus[ed] the lens of inquiry too narrowly"). Rather, a reviewing court must consider whether jury instructions, taken as a whole, are reasonably likely to have misled the jury. See Phath, 144 F.3d at 149.

In this case, the district court repeated, over and over again — including immediately before and immediately after the challenged sentence — that the government had to prove beyond a reasonable doubt that the defendant knew, believed, or intended

that the offense involved 500 grams or more of cocaine. The defendant readily admits that the district court properly explained the jury's obligations several times throughout the course of its jury instructions. So, too, the verdict form accurately conveyed that drug quantity was an element of the offense. Amidst this bevy of accurate statements, an argument that the challenged sentence altered the meaning of the instructions trenches on the frivolous. This is simply not a case where the jury was reasonably likely to have been misled by the court's instructions. See, e.g., Pennue, 770 F.3d at 990 (finding fact that "erroneous instruction was followed immediately by a correct instruction" weighed in favor of conclusion that jury was not reasonably likely to have been misled as to applicable law).

## III. CONCLUSION

We need go no further. We hold that the district court's decision to deny the defendant's Rule 16 motion was not an abuse of discretion. We further hold that the district court's jury instructions, taken as a whole, were not erroneous. Consequently, the judgment of the district court is

**Affirmed.**