# United States Court of Appeals
## For the First Circuit

No. 99-1758

UNITED STATES OF AMERICA,

Appellee,

v.

LOUIS DUCLOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Stahl, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, for appellant.

Joseph S. Berman, with whom Berman and Dowell was on brief, for appellee.

May 31, 2000

**BOWNES, <u>Senior Circuit Judge</u>.**  This is an appeal from a conviction and sentence imposed by the United States District Court for the District of New Hampshire.  Defendant-Appellant Louis Duclos offers two grounds for reversal of his conviction and one claimed error in sentencing.  We reject Duclos's claimed trial errors as having no basis in law or fact and find that the district court did not abuse its discretion in imposing sentence.  Accordingly, we affirm.

## I. Facts

This case involves a relationship gone horribly awry.  While many of the predicate facts are in dispute, this much is clear:  Duclos was involved with a woman named Angela Gillis, and after that relationship ended, he invested a great deal of time and energy in searching for her.  It is this search that brought about the events leading to his prosecution.

The specific nature and chronology of the relationship between Duclos and Gillis is complicated.  The full record (including a host of <u>pro</u> <u>se</u> filings) details the many vacillations between Duclos and Gillis.  The crux of the matter, however, is that when Gillis left Duclos, she resumed a previous relationship with Ronald Bossey.  Duclos, for his part, simply would not let go.  Over an extended period of time he engaged in

a pattern of behavior that both the government and Gillis credibly characterize as stalking.

As part of Duclos's multi-faceted plan to locate Gillis and rescue her from the clutches of Bossey, as he saw it, Duclos monitored the post office box that Bossey shared with Gillis. On September 15, 1997, Duclos filed a change-of-address card in the United States Post Office in Laconia, New Hampshire, where Bossey's box was located. The card requested that the United States Postal Service forward all mail addressed to the post office box of Ronald Bossey to a new address: Duclos's home address. Duclos signed the form "Ronald Bossey." Because the card requested that the change be permanent, Bossey's post office box was closed, and the lock was changed.

Ten days after diverting Bossey's mail, Duclos apparently attempted to cancel the forwarding order. Because he had denoted the earlier change as permanent, he was unsuccessful.

In late September or early October of 1997, Ronald Bossey attempted to retrieve mail from his rented box, only to find that the lock had been changed. Bossey inquired about this and learned that there had been a permanent change-of-address request. When the postal clerk compared the signature on the

change-of-address card with the one on Bossey's driver's license, it was apparent that the card had been forged.

Soon thereafter, United States Postal Inspector Peter Keefe obtained the original change-of-address card and interviewed Bossey, who led him to Duclos. When Keefe spoke to Duclos, Duclos told Keefe "that he was not going to lie," and admitted filing the card.

Duclos explained his actions, both to Keefe and later at trial, by arguing that he had done what he did out of a desire to protect Gillis. Duclos claimed that he understood Bossey to be a violent person, who had been dishonorably discharged from the military and who kept a firearm in his apartment. Duclos also believed that Bossey had taken money from Gillis, including a death benefit check due her because of the death of her husband. Duclos also claimed that he feared that Gillis, who was pregnant, was using drugs with Bossey.

Apparently, Duclos monitored the post office box for a number of weeks and then eventually submitted the false address card. The government presented testimony at trial in which "[Duclos] said he figured they may have made plans the prior month to go somewhere and that he would be able to trace them via the telephone bill of the calls they made."

A federal grand jury indicted Duclos on two charges: filing a false statement with the United States Postal Service, in violation of 18 U.S.C. § 1001 (Supp. IV 1998), and obstructing correspondence, in violation of 18 U.S.C. § 1702 (1994). At trial, Duclos invoked a defense of necessity, claiming that his actions were taken out of fear for Gillis' safety and a desire to protect her. The jury rejected these defenses, convicting him on both counts.

The United States Probation Department recommended a base offense level of 4, pursuant to U.S.S.G. §§ 2F1.1 and 2H3.3(b). The Department also recommended an increase of two levels for taking undelivered United States mail, pursuant to U.S.S.G. § 2B1.1(b)(3)(A), an increase of two levels for more than minimal planning under U.S.S.G. § 2B1.1(b)(4)(A), and an increase of two levels for obstruction of justice under U.S.S.G. § 3C1.1. Duclos made timely objections to the latter two enhancements. The trial judge found that Duclos had engaged in more than minimal planning and accordingly added two levels; the court declined to increase the sentence for obstruction of justice. With Duclos's criminal history category of IV, and a total offense level of 8, the court sentenced him to 14 months, which was within the guideline range of 10-16 months.

**II. Sentencing Appeal**

In his brief on appeal, Duclos devotes the majority of his argument to his sentencing appeal. Accordingly, we consider it first. Duclos claims that the district court should not have imposed the two-level enhancement for more than minimal planning.

In reviewing a decision to enhance a sentence from the base offense level, we employ a bifurcated standard of review. See United States v. Thompson, 32 F.3d 1, 4 (1st Cir. 1994). We review the legal determination of the guideline's meaning and scope de novo, see id.; United States v. Brewster, 1 F.3d 51, 54 (1st Cir. 1993), but allow due deference to the district court's factfinding, reviewing it only for clear error, see Brewster, 1 F.3d at 54; Thompson, 32 F.3d at 4; United States v. Nunez, 146 F.3d 36, 40 (1st Cir. 1998).

The relevant enhancement states: "If the offense involved more than minimal planning, increase by 2 levels." U.S.S.G. § 2B1.1(b)(4)(A). Section 2F1.1 of the guidelines, which applies to violations of 18 U.S.C. § 1001, allows for use of this enhancement.[1] The Commission provides a gloss on the

---

[1] Duclos offers an argument for the first time on appeal that the district court should only have considered the enhancement as it related to the false statement charge. Setting aside serious questions of waiver, we reject his contention by pointing to the fact that the two offenses were properly grouped together under U.S.S.G. § 3D1.2(b), and that the enhancement may be considered with respect to all relevant

bare language of the enhancement in Application Note 1(f) to

Section 1B1.1, which states:

> "More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense . . . . "More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property crimes.

The most recent statement in this circuit on "more than minimal planning" comes from our decision in United States v. Phath, 144 F.3d 146 (1st Cir. 1998). In that case, we found clear error in the district court's imposition of the "more than minimal planning" enhancement, marking the first time that we had overturned such an enhancement. See id. at 151. The crime at issue in Phath was an unsophisticated bank fraud scheme. In Phath, a stranger approached the defendant in a casino and offered him money to deposit checks in his bank account and withdraw cash a short time later when the checks had cleared. See id. at 147-48. The stranger also asked Phath to find friends who would do the same. See id. at 148. This was the

_____

conduct. See United States v. Ivery, 999 F.2d 1043, 1046 & n.2 (6th Cir. 1993).

extent of his crime.  The district court in that case applied the more than minimal planning enhancement, stating:  "[T]his is not an offense in its simplest terms.  It has several layers of intricacy which are designed to conceal the offense itself." Id. at 150.

We reversed, stating that:  "Phath's crime was simple and short-lived."  Id.  We rejected the argument proffered by the government that any crime that is not "purely opportune" involves more than minimal planning. See id.  Instead, we found dispositive two facts.  First, Phath's acts were in no way "repeated acts over a period of time." Id.  Second, Phath took no "significant affirmative steps to conceal the offense."  Id. We suggested that, had the defendant's actions been repeated acts, we would have then continued the inquiry to determine whether each repeated action was "purely opportune."  See id.

With these principles in mind, we consider the instant case, mindful of the mandate that "[t]he district court's judgment that an offense involves more than minimal planning is a factual finding that we overturn only if it is clearly erroneous."  Id. at 149.  In this case, the difference between the defendant's view of the enhancement and the view adopted by the district court is essentially one of perspective.  Duclos wishes us to view his conduct close-up — that is, he urges us to

ask whether he engaged in more than minimal planning for the act of filing the false change-of-address card.  The district court, on the other hand, took a more holistic view, and one we think more in line with the Guidelines' definition of conduct relevant to planning the crime.  The district court considered the conduct in light of the entire scheme admittedly engaged in by Duclos in order to commit the offense.

The district court stated:

> The defendant first had to determine where Mr. Bossie [sic] lived, and that certainly required time and effort.  He then had to determine that his mail was not being delivered to his residence.  He then had to determine where the post office was and the box where Mr. Bossie's mail was being delivered.  He then had to fill out PS Form 3546, which is the forward change notice form, and file that with the postal authorities.
>
> The mail was then forwarded. He used, got whatever information he wanted to from the mail and then to avoid detection destroyed mail.  He then had to forward a cancellation notice in order to once again attempt to avoid detection.
>
> So taking the totality of these circumstances, it is the opinion of the Court that having considered the <u>Fath</u> [sic] case and its ruling[,] that these offenses, taken together, involved more than minimal planning.

As the district court suggested, there are crucial differences from <u>Phath</u> that make Duclos's case distinct.  First, Duclos's case involves an extended course of conduct, or a scheme that

continued over a significant period of time.[2]  Second, Duclos

took affirmative steps to cover up his crime.  This is a clear

ground for applying the enhancement, see Application Note 1(f)

to § 1B1.1, and the district court's fact-finding on this point

is unassailable.  Accordingly, we are unable to say that the

district court's findings of fact and concomitant imposition of

the enhancement were clearly erroneous.

### III. Sufficiency of the Evidence

Duclos claims that, in light of his necessity or

justification defense, the jury's verdict was against the weight

of the evidence.  He claims that his defense raised a reasonable

doubt that his conduct was willful and knowing.  The high

standard for such a challenge is well-known.  Duclos must show

that no rational jury could have found him guilty beyond a

reasonable doubt.  See United States v. Scharon, 187 F.3d 17, 21

(1st Cir. 1999).  We review the sufficiency of the evidence as

a whole, taking the evidence in the light most favorable to the

verdict and taking into account all reasonable inferences, and

resolving all credibility issues in favor of the verdict.  See

---

[2] We do not mean to suggest that Duclos's stalking
activities that were not in preparation for the criminal act
render him eligible for a "more than minimal planning"
enhancement.  Rather, we focus solely on those of Duclos's
actions that were relevant to obtaining the information
necessary to commit the offense.

id. The scope of review is over the totality of the evidence, both direct and circumstantial. See United States v. Woodward, 149 F.3d 46, 56 (1st Cir. 1998), cert. denied 119 S. Ct. 1026 (1999).

To prove a false statement in violation of 18 U.S.C. § 1001, the government must show that the defendant: (1) knowingly and willfully, (2) made a statement, (3) in relation to a matter within the jurisdiction of a department or agency of the United States, (4) with knowledge of its falsity. See United States v. Wiener, 96 F.3d 35, 37 (2d Cir. 1996), aff'd sub nom. Brogan v. United States, 522 U.S. 398 (1998). To prove obstruction of correspondence in violation of 18 U.S.C. § 1702, the government must prove that the defendant (1) knowingly took mail from a post office or authorized depository for mail, (2) before it was delivered, (3) with the specific intent to obstruct correspondence or pry into the business or secrets of another. See United States v. Gaber, 745 F.2d 952, 955 (5th Cir. 1984).

As a preliminary matter, it is beyond cavil that Duclos, absent his affirmative defense, admitted the elements of both crimes. Duclos attempts to dispute his intent, saying that he committed the act in question so quickly and without thinking that he did not have time to form the requisite intent. This

-12-

argument, however, confuses intent with premeditation. Duclos admitted at trial that he knew the nature of his act, and that he knew what its likely effect would be. This amounts to intent.

Duclos's more complicated argument on sufficiency of the evidence involves the question of his affirmative defense. Duclos notes correctly that his behavior might be excused by the defense of necessity. This defense, like other justification defenses, allows a defendant to evade responsibility for otherwise criminal actions notwithstanding proof of the elements of the offense. See United States v. Smith, 160 F.3d 117, 123 (2d Cir. 1998). The essence of the defense is that otherwise criminal conduct may be excused when the defendant commits the acts in order to avoid a greater evil. In one formulation of this defense (on which Duclos himself relies in his brief on appeal), the defense requires that the defendant had no legal alternative to violating the law; the harm he sought to prevent was imminent, and a direct, causal relationship is reasonably anticipated to exist between defendant's actions and the avoidance of harm.[3]

_____

[3] As the Tenth Circuit has noted, there are differing formulations of the defense. See United States v. Unser, 165 F.3d 755, 764 (10th Cir.), cert. denied, 120 S. Ct. 40 (1999). Notably, the Model Penal Code's version of the defense ("Choice of Evils," in the parlance of the Code) appears to set a higher

-13-

Duclos's sufficiency of the evidence argument is that his properly alleged affirmative defense was not rebutted by the government, which, he argues, bore the burden of proving the non-existence of the defense by a reasonable doubt. Throughout this opinion, we assume arguendo that Duclos is correct in assigning the burden of proof at all times to the government. Duclos's argument, however, is without foundation in the facts of this case. First, his defense was predicated on his own testimony that he believed his conduct necessary to avoid harm to Gillis. The government, however, savaged Duclos's credibility at trial such that a rational juror might have rejected his defense based on lack of credibility alone. Second, Duclos's own testimony undercut his defense. While he argued that he felt his conduct necessary to avert harm to Gillis, he also testified repeatedly that he acted on the spur of the moment, without knowing what he was thinking. The jury could have concluded from this that he acted upon impulse, and without the sort of deliberation they might think should accompany his affirmative defense. Third, the jury heard a vast

---

bar for defendants. See Model Penal Code § 3.02; see also Smith, 160 F.3d at 123 & n.3 (noting distinctions between formulations of the defense). We do not intend our recitation of this particular formulation to suggest that we adopt it as the law of the First Circuit. We have accepted the formulation offered by Duclos only arguendo.

-14-

quantity of evidence about Duclos's stalking of Gillis that might well have led it to believe that Duclos committed his crime because he was obsessed with Gillis, not out of a reasonable belief in her imminent harm. Fourth, the government provided sufficient evidence on cross-examination for the jury to find beyond a reasonable doubt that the imminence prong of the defense was not present.

Accordingly, Duclos's claim of insufficiency of the evidence must fail.

**IV. Jury Instructions**

Duclos presents a properly preserved claim of error in the court's jury instructions. Such a claim is subject to de novo review. See United States v. Woodward, 149 F.3d 46, 68 (1st Cir. 1998), cert. denied, 119 S. Ct. 1026 (1999). An error in jury instructions will mandate reversal only when the error is prejudicial based on a review of the entire record. See Davet v. Maccarone, 973 F.2d 22, 26 (1st Cir. 1992).

Duclos argues that although the court properly instructed the jury on the affirmative defenses, the court's comments immediately after the instruction amounted to an instruction that shifted the burden of proof on the affirmative defense to the defendant. The court stated:

> A general fear, or an apprehension of danger that is vague or imprecise or that is not a

-15-

fear of immediate harm or death, is not sufficient to support the necessity to act in defense of a third person.

The court then stated:

> On this issue [the affirmative defense], just as on the others, <u>the burden is on the government to prove the defendant's guilt beyond a reasonable doubt</u>. To find Louis Duclos guilty, therefore, in addition to finding beyond a reasonable doubt each of the elements of the two offenses charged, you must conclude beyond a reasonable doubt that when he committed the acts charged in the indictment, one, no such harm existed or it was not immediate; or two, he did not have a well-grounded belief that the harm existed; or three, there were reasonable alternatives to prevent such harm. (emphasis added).

The only instructions that came between the objected-to instruction and the above-quoted burden of proof instruction was a proper continuation of the affirmative defense instruction. Accordingly, the above instruction corrected immediately any misimpression the jury might have had with respect to the burden of proof. We are therefore unable to say that any error in the instruction, if there was indeed any error at all, was prejudicial.

<u>Affirmed</u>.