# United States Court of Appeals
## For the First Circuit

No. 99-1462

UNITED STATES,

Appellee,

v.

CARLOS L. HERNANDEZ-VEGA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lipez, Circuit Judge.

Rafael F. Castro Lang for appellant.

Jacabed Rodríguez-Coss, Assistant United States Attorney, with whom, Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, were on brief for appellee.

December 29, 2000

**BOWNES, Senior Circuit Judge.** Defendant-appellant Carlos L. Hernandez-Vega, along with eight other defendants, was tried pursuant to a three-count indictment in the District Court for the District of Puerto Rico for drug related activities. The indictment charged as follows: Count I, 21 U.S.C. § 848(a) and (b), continuing criminal enterprise, and 18 U.S.C. § 2, aiding and abetting; Count II, 21 U.S.C. § 846, conspiracy to distribute in excess of five kilograms of heroin, in excess of five kilograms of cocaine, in excess of five kilograms of cocaine base and in excess of 100 kilograms of marijuana; and Count III, 18 U.S.C. § 924(c)(1) & (2), unlawful use of firearms during and in relation to a drug trafficking offense and aiding and abetting.

All nine of the defendants who stood trial were found guilty on all or some of the counts. We consolidated the appeals. Seven of the defendants argued orally on September 14, 2000. The other two defendants' appeals were submitted on briefs to the same panel.

The defendant in this case, Carlos Hernandez-Vega, was found guilty on all three counts. He was sentenced to life imprisonment on Counts I and II of the indictment[1] and a term of ten years on Count III, to be served consecutively. Defendant

---

[1]Count II was subsequently dismissed.

has raised five issues on appeal, which we will discuss in the order followed in his brief.

## I.  FACTS

We state the facts in the light most favorable to the verdict.  See United States v. Duclos, 214 F.3d 27, 32 (1st Cir. 2000).  This rehearsal of the evidence does not, of course, cover the facts that are applicable only to other defendants. Nor do we recite, at this juncture, all of the facts involving defendant.  Many of the facts pertaining to particular issues will be set forth in our discussion of the issues.  All we do now is state those facts that will give the reader the necessary background information to understand the different issues raised by defendant.

Defendant and Vega-Figueroa were in charge of an extensive criminal enterprise involving the sale and distribution of heroin, cocaine, crack cocaine, and marijuana. Cooperating witnesses for the government included five former members of the enterprise who sold narcotics for the organization.  Their testimony can be summarized as follows.

Defendant and/or Vega-Figueroa delivered the drugs to the various cooperating witnesses at the drug point, located in

a public housing project.  Members of the enterprise carjacked automobiles on a regular basis.  The carjacked vehicles were then used for drive-by shootings targeted against other drug dealers who operated drug points in other public housing units in competition with defendant and Vega-Figueroa.  The drug distribution point of the enterprise was guarded by armed members of the organization.  There was also testimony that defendant and Vega-Figueroa operated a heroin drug point located within the Hogar Crea detention and drug rehabilitation facility in Saint Just at Trujuillo Alto, Puerto Rico.  Another drug gang ousted two members of defendant's organization from the Hogar Crea drug point.  Defendant and Vega-Figueroa ordered that the two men who had taken over the Hogar Crea drug point be murdered.  The men were ambushed and killed by defendant, Vega-Figueroa, and other members of defendant's enterprise.

The indictment charged that the continuing criminal enterprise and conspiracy started on or about August 1, 1990, and continued until on or about April 10, 1997.

## II.  ISSUES

We state the issues as phrased by defendant.[2]

---

[2]The first issue raised by defendant is that he received life sentences under both Counts I and Count II, thus violating principles of double jeopardy.  As Count II has been dismissed, leaving only one life sentence, this point needs no discussion.

**A. Whether the district court committed reversible error in its instructions to the jury as to the continuing criminal enterprise charged in Count I of the indictment.**

The district court instructed the jury as follows:

In Count I of the indictment two of the defendants are charged, Jose Vega Figueroa and Carlos Hernandez Vega. The law makes it a federal crime or offense for anyone to engage in what is called a continuing criminal enterprise involving controlled substances.

A defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First, that the defendants violated Section 841(a)(1) as charged in the indictment. This is the drug trafficking case.

Second, that such violations were a part of a continuing series of violations as herein after defined.

Third, that such continuing series of violations were undertaken by the defendants in concert or together with at least five or more other persons.

Fourth, that the defendant occupied the position of an organizer, supervisor or manager.

Fifth, that the defendant obtained substantial income or resources in the continuing series of violations.

A continuing series of violation means proof of at least three violations under the Federal controlled substances law, as charged in Count I of the indictment, and

-6-

also requires a finding that those violations were connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts. You must unanimously agree on which three violations constitute the series of three or more violations in order to find the essential element No. 2 of this offense has been proven.

It must also be proved that the defendants engaged in the continuing series of violations with at least five or more persons, whether or not those persons are named in the indictment and whether or not the same five or more persons participated in each of the violations, or participated at different times. And, it must be proved that the defendant's relationship with the other five or more persons was that of organizers, supervisors or managers – that the defendant's relationship with the other five or more persons was that of organizer, supervisor or manager, and that the defendant was more than a fellow worker and either organized or directed the activities of the others, whether the defendant was the only organizer or supervisor or not.

Finally, it must be proved that the defendant obtained substantial income or resources from the continuing series of violations. This means that the defendant's income from violations, in money or other property, must have been significant in size or amount as distinguished from relatively insubstantial, insignificant or trivial amount.

In Richardson v. United States, 526 U.S. 813, 815 (1999), the Court, per Justice Breyer, held:

A federal criminal statute forbids any "person" from "engag[ing] in a continuing criminal enterprise." 84 Stat. 1264, 21

U.S.C. § 848(a). It defines "continuing criminal enterprise" (CCE) as involving a "violat[ion]" of the drug statutes where "such violation is a part of a continuing series of violations." § 848(c). We must decide whether a jury has to agree unanimously about which specific violations make up the "continuing series of violations." We hold that the jury must do so. That is to say, a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some "continuing series of violations" but also that the defendant committed each of the individual "violations" necessary to make up that "continuing series."

Defendant acknowledges that the district court instructed the jury that it had to unanimously agree as to the three violations that constituted the series of violations. He contends, however, that the court erred because "it failed to identify which predicate offenses the continuing criminal enterprise was based upon so as to permit the jury to determine if it unanimously agreed upon said specific predicate offenses which should have been specifically identified in the jury instructions."

We read nothing in Richardson requiring such action by the district court. If it had instructed the jury along the lines defendant suggests, it would have usurped the function of the jury. Accordingly, we rule that the instruction met the Richardson requirements.

**B. Whether the district court committed reversible error by allowing evidence of drug trafficking at the Ramos Antonini Housing Project during 1996 and 1997 and an agent's interpretation of videotapes.**

The material allowed to be introduced as evidence over defendant's objections included videotapes and photographs taken at the drug point in the Ramos Antonini Housing Project. The evidence allegedly depicted narcotic sales taking place on the following dates: April 24, May 28, May 30, May 31, June 5, June 13, and June 15, 1996; and January 30, 1997.

Defendant also objected to the expert testimony of Elias Negron, a member of the FBI's Safe Streets Task Force. Negron explained to the jury how the videotapes depicted drug transactions. Negron also gave his expert opinion that the extended period of lack of violence at the drug point showed that defendant and his cohorts had such secure control of the drug point that no other drug gangs would attempt to take it over.

Defendant's objections to the videotape evidence are based on relevancy and Federal Rule of Evidence 403. The relevancy contention is twofold: (1) that the evidence did not prove that the drug trafficking at the drug point in the housing development in 1996 and 1997 related to defendant and the conspiracy charged in the indictment; and (2) that both

defendant and Vega-Figueroa had been absent from the Ramos Antonini Housing Project since 1995.

There was a plethora of evidence, however, as to how defendant and Vega-Figueroa operated and strictly controlled the enterprise regardless of their occasional physical absence from Puerto Rico. William Acevedo Rodriguez, a trusted lieutenant in the enterprise, testified as to the operation of the drug points.[3] Alicia Gotay Saez testified that she and her sister ran a drug point in the housing project in competition with the one run by Vega-Figueroa and defendant. Gotay described in detail how a drug point is operated. She also testified that after she refused to join Vega-Figueroa's enterprise, her sister was shot to death at his drug point.

Ramon Caesareo Soto, who worked for a rival of the criminal enterprise throughout the life of the conspiracy run by Vega-Figueroa and defendant, described in detail the violence and killings that had taken place in the Ramos Antonini Housing Project between rival drug gangs for control of the drug trade in the project in the years 1960 to 1963. He testified that, by

---

[3]After Acevedo was arrested in March of 1995, he decided to become a cooperating witness. He was afraid that if he was incarcerated in the main prison at Guayama, he would be killed by other inmates because he had participated in the killing of friends of theirs.

-10-

1997, there was only one drug point in the project, which was controlled by the enterprise run by Vega-Figueroa and defendant.

There was evidence from which a jury could find beyond a reasonable doubt that defendant was part of a criminal enterprise and conspiracy devoted to selling illegal drugs that started on or about August 1, 1990, and continued through March, 1997. There was also evidence from which a jury could reasonably find that the physical presence of defendant and/or Vega-Figueroa at all times was not necessary to the daily operation of the two drug points.

The evidence described above was not the only evidence before the jury on drug trafficking under defendant's and Vega-Figueroa's auspices. Our careful scrutiny of the record convinces us that the jury verdict was based on evidence that constituted proof beyond a reasonable doubt of defendant's guilt as charged in the indictment.

We now turn to the objection based on the admission of videotapes and photographs of the drug point in the public housing project and the admission of expert testimony to explain the tapes and photographs. Defendant argues that this evidence should have been excluded because it violated Fed. R. Evid. 403.

Rule 403 provides:

Exclusion of Relevant Evidence on Grounds of
Prejudice, Confusion, or Waste of Time

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Defendant objected to the introduction of the videotapes and photos as highly prejudicial because they were taken after he had left Puerto Rico, while he was in New York State. We point out that New York and Puerto Rico are only a short plane ride apart and telephone communication is routine. We have already found that defendant's daily presence was not necessary for the operation of the drug point. There was no violation of Fed. R. Evid. 403 by the introduction of the videotapes and photos of the drug point.

Defendant also claims that it was a violation of Rule 403 to allow an expert witness to explain to the jury what the videotapes and photos depicted. He argues that the testimony of the expert was not necessary because the jury was capable of understanding what was going on without expert help.

The appropriate test for reviewing the admission or exclusion of expert testimony is abuse of discretion. General Elec. Co. v. Joiner, 522 U.S. 136, 139 (1997). Elias Negron, a member of the FBI's Safe Streets Task Force, provided his expert opinion that the videotapes and photographs showed drug

-12-

transactions taking place. He also proffered his opinion that the extended non-violent period at the housing project showed that defendant and Vega-Figueroa were in firm control of drug trafficking at the project and that no other drug gangs attempted to compete with the criminal enterprise and conspiracy in which defendant played a major role. It seems clear that under the pertinent facts and the applicable law the district court did not abuse its discretion in admitting the videotapes and photos and allowing Elias Negron to testify as he did.

> **C. Whether or not prosecutor's closing argument stating repeatedly that the government's evidence had gone "unrebutted" and "unrefuted" constituted improper comment on the silence of defendants and transferred burden of proof to defendants and improper argument concerning "dream" of peaceful residential projects warrants granting of new trial.**

No objections were made by defendant to the statements by the prosecutor during her argument. This means that we review for plain error. See United States v. Sepulveda, 15 F.3d 1161, 1187 (1st Cir. 1993).

Once the prosecutor's words are placed in context, we inquire whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Id. at 1187 (quoting United States v.

-13-

<u>Glantz</u>, 810 F.2d 316, 322 (1st Cir. 1987) (citations omitted)).

We note that in his final charge, the judge instructed the jury that the defendants had the right to remain silent and not testify, and that their failure to testify could not be considered as a factor in the case.

Our first task is to put the prosecutor's words in context.  She began her argument by stating:

> I'd like to start by highlighting what evidence we have presented to you that is just simply, completely unprofitable [sic], unrebuttable.
>
> What do we know is a fact, that neither I nor any defense counsel that can stand here before you can argue to the contrary?  What has been so well-established that it is simply undeniable?
>
> . . . We know that on May 16th, 1994, two people got killed at the Hogar Crea located in Saint Just La Quinta in Carolina, and that was Reinaldo Colón Gonzalez and Melvin Flores Montalvo.  No doubt about that.
>
> What else do we know about that event that is completely unrefutable?  We know that Daisy Serrano found 19 rifle casings at the scene of these two murders.
>
> We know that Daisy Serrano found 18 .45-caliber casings at the scene of these two murders.  They were there.  They've been admitted here in court.  There is nothing that any witness can say or that any person can argue that these casings do not exist. Eighteen .45-caliber casings recovered from the scene of these crimes.  Nineteen rifle casings recovered from the scene of these

-14-

two murders.  They're here.  They exist.
There's no doubt about that.

Thirty 9-millimeter casings recovered
at the scene of this crime.  Those are here
also.  These simply cannot go away; there's
just no going around that.

It seems obvious that the prosecutor was not, even by
the broadest possible interpretation of the words "unprofitable"
and "unrebuttable," commenting on defendant's failure to
testify.  What she stated were <u>facts</u> that were unrebuttable.

The next statement was made in the following context.

We also know that one of those
individuals was carrying this revolver,
because Mr. Maldonado told you that
projectiles recovered from the body of
Reynaldo and at least one projectile
recovered from the body of Melvin were fired
by this revolver right here (indicating).
That's unrebuttable.

Where was this revolver found?  This
revolver was found in the house of Carlos
Hernandez Vega.  That evidence also went
unrebutted before you.

The agent who found this weapon, Edwin
Rodriguez, says, "I found this weapon in the
house of Carlos Hernandez Vega," and Mr.
Maldonado says this was one of the revolvers
used during the commission of the murders at
Hogar Crea.

The context is not complete, however, without the
following.  There was an objection by defense counsel:

MS.  DAVILA:  She  misstated  the
evidence.  She said it was found in Carlos
Hernandez Vega's.  What the evidence said

-15-

was that the agent seized it from the floor of the bottom of the residential project.

. . . .

MS. RODRIGUEZ: We stand corrected.

The prosecutor acknowledged that she had incorrectly stated the testimony of a witness.

The next comment and context is as follows.

And it just so happens that one of the other weapons used in the murders is found in Carlos Hernandez Vega's and at least one other person who William Acevedo Rodriguez says was with him admits to Agent Luis Negron and to Agent Vazquez of the FBI that he is indeed guilty of the Hogar Crea murders. It's unrefutable evidence. It's unrebuttable.

Acevedo was a former member of the enterprise and conspiracy. He was one of the chief witnesses for the government. His admission to murder is hardly the type of statement that the jury would think that defendant would want to answer.

The next statement in context was:

Now, what else, what other evidence has come before you that is unrebuttable, undisputed?

Well, we know that at least one wound on Reynaldo Colón Gonzalez's body was fired from a distance of less than 2 feet. Whoever fired the shot that made that tattoo which Dr. Rosa Figueroa explained to you is caused by gun powder particles which are lodged on the skin when the gun is being held at a close distance from the victim

-16-

> means that that one shot was fired less than 2 feet away.
>
> What does that mean?  That means that Reynaldo could not have been any further away from the person who was holding that gun to his head than that TV is to me right now – less than 2 feet; less than 2 feet away.  That is undisputed, unrebuttable evidence.

Here, the use of the words "undisputed, unrebuttable evidence" hardly can be construed as a comment on defendant's failure to testify about these facts.

We proceed to the next statement:

> What else has been presented that is unrebuttable, unrefuted testimony?  Well, we know that in May of 1996, Edgardo Quiros Morales produced these two rifles right here in a matter of minutes to a police officer so he would do away with an arrest warrant against him.

Again, we find nothing to suggest a trespass on defendant's right to remain silent in this statement.

The final statement is slightly more troubling:

> What was he going to do with the cocaine and marijuana that was seized in that apartment in 1992?  That evidence came before you unrebutted and unrefuted.

This statement conceivably could be construed as a comment on the defendant's failure to explain the circumstances of the drugs being in his apartment.  But there was no contemporaneous objection, and we have held in such

-17-

circumstances that ambiguous statements in a prosecutor's summation ordinarily should be given their more innocuous meaning.  United States v. Lilly, 983 F.2d 300, 307 (1st Cir. 1992).

We need not decide whether this instruction involved plain error, because in all events, we think that any error was harmless.  Rule 52(a) of the Federal Rules of Criminal Procedure defines harmless error as "[a]ny error, defect, irregularity or variance which does not affect substantial rights . . . ."  Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  The Supreme Court held in United States v. Olano, 507 U.S. 725 (1993), that "Rule 52(b) leaves the discretion to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 732 (quoting United States v. Young, 470 U.S. 1, 15 (1985)).  Whether an error is prejudicial or harmless depends on whether it effects the outcome of the case.  See id. at 734 (holding that the "affecting substantial rights" language of Rule 52(b) "means that the error must have been prejudicial:  It must have affected the outcome of the

district court proceedings"). In order to satisfy the "affecting substantial rights" prong of Rule 52(b), a defendant must normally make a specific showing of prejudice. See id. at 737.

The harmless error doctrine also applies to the final statement made by the prosecutor in her argument.

> I will tell you and leave you with this thought. There is a dream in public housing projects in Puerto Rico. That there is a tomorrow that we can make it better. That is our dream, that is part of our promise, and by "our" I mean those of us in Puerto Rico.

**D. Whether or not the district court committed reversible error in allowing prosecutor to present false New York identifications of appellant in evidence, which were obtained while appellant was charged on unrelated state charges and were distant in time from indictment object of trial.**

Ten days before being indicted, defendant was arrested in New York on charges unrelated to those in this case. When arrested, defendant possessed several false identification items. These were introduced in evidence over defendant's objections.

In her closing argument, the prosecutor characterized defendant's possession of false identification as "consciousness of guilt." The government points out that Acevedo Rodriguez, a

-19-

member of the enterprise with whom defendant had participated in drug-related murders, was arrested in March, 1995. Because of statements Acevedo had made to another member of the conspiracy charged in this case, defendant knew that Acevedo planned to be a cooperating witness in this case. Based on these premises, the government contends that defendant had obtained false identification so as to avoid prosecution in this case. Defendant counters that he obtained the false identification as long as seventeen months before he was indicted in this case, and that the false identification was discovered during the prosecution of an entirely different case.

We decline to decide this issue. It is abundantly clear from the record that if it was error to admit the false identification evidence, the error was harmless. See Fed. R. Crim. P. 52(a).

The judgment of the district court is **affirmed**.