**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Carl E. BINETTE, Defendant.**

**Case No. 10–cr–30036–MAP.**

United States District Court,
D. Massachusetts.

May 15, 2013.

Amy H. Burkart, Vassili Thomadakis, United States Attorney's Office, Boston, MA, for Plaintiff.

Myles Jacobson, Law Office of Myles Jacobson, Northampton, MA, for Defendant.

*MEMORANDUM AND ORDER RE-GARDING DEFENDANT'S MO-TION TO VACATE CONVICTION AND FOR NEW TRIAL ON COUNT VII* (Dkt. No. 174)

PONSOR, District Judge.

## I. *INTRODUCTION*

This motion presents the court with a simple question: to obtain a conviction for making a false statement under 18 U.S.C. § 1001, must the government prove, in the context of this case, that Defendant knew, or should have known, that he was in fact speaking to a government agent at the time he made the false statement? In his testimony at the trial in this case, Defendant admitted that he lied during the course of a telephone call he received at work from people who said they were with the Securities and Exchange Commission ("SEC"), but he testified, in substance, that he was concerned that the people calling him may have been misrepresenting themselves and may have been identity thieves. At one point, he testified that he considered the call a joke.

Prior to final argument at trial, Defendant's counsel requested an instruction to the jury to the effect that, to convict Defendant of making a false statement under § 1001 on the facts of this case, the government had to prove that Defendant knew or should have known he was speaking to a government agent. Relying on the government's citation of the Supreme Court's decision in *United States v. Yermian*, 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), and, in part, on the First Circuit's Pattern Instructions, which do not include this element, the court declined to give the instruction.

 Following deliberations, the jury found Defendant guilty on the false statement count as well as related conspiracy and insider trading counts. Having now reviewed the issue of the proper false statement instruction more carefully, it is clear that the better view of the law is that a defendant charged with making a false statement is entitled, where (as here) the evidence reasonably raises the issue, to an instruction that before he can be convicted the jury must find that he knew, or reasonably should have known, that he was in fact speaking to a government agent. This was, in substance, the instruction given by the lower court in *Yermian*, 468 U.S. at 67 n. 4, 104 S.Ct. 2936. Based on this analysis, Defendant's motion to vacate the conviction and for new trial on Count VII will be allowed.

## II. *PROCEDURAL BACKGROUND*

The background of this case is as follows. On October 14, 2010, Defendant Carl E. Binette and his uncle, Peter E. Talbot, were indicted on one count of conspiracy and five counts of a form of securities fraud known as "insider trading." Mr. Binette was, in addition, separately charged with obstruction of justice pursuant to 18 U.S.C. § 1512(c)(2).

The government charged that in the spring of 2008 Talbot, as an employee of The Hartford Investment Management Company ("HIMCO"), acquired inside information regarding the imminent acquisi-

tion of a Seattle-based insurance company known as Safeco Corporation by another insurance company. Exploiting this inside knowledge, Talbot assisted Binette in setting up a brokerage account and in purchasing "call" options on Safeco stock. These options gave Binette the right to purchase Safeco stock at a particular price for a particular, limited period of time. As a result of his purchase of these call options, the government charged, Binette realized a profit of over $615,000 when Safeco's stock price soared after the announcement of the acquisition in April of 2008.

The original obstruction of justice charge, against Binette alone, arose from a phone interview on May 12, 2008. At that time, three attorneys from the SEC contacted Binette by telephone at work to question him about his purchases of the Safeco call options. According to the government (but denied by Defendant), the SEC attorneys asked Binette during this unrecorded call whether he had any communications prior to his purchases or had received any information regarding Safeco that persuaded him to go forward with the risky investment. Binette, the indictment charged, lied to the SEC attorneys, concealing the fact that he had received inside information from his uncle, Peter Talbot, and falsely stating instead that he had learned of the Safeco securities in an Internet chatroom and had also been indirectly encouraged by a dream in which his deceased sister appeared and told him she was "safe." These alleged lies formed the basis of this original obstruction of justice charge.

On May 2, 2011, counsel for Binette filed a Motion to Dismiss the obstruction charge, set forth in Count VII, arguing that the May 12, 2008, telephone conversation did not constitute an "official proceeding" as required for prosecutions for ob-

struction of justice under 18 U.S.C. § 1512(c)(2). (*See* Dkt. Nos. 26 and 27.)

On December 8, 2011, this court allowed the Motion to Dismiss, relying on the logic of *United States v. Ramos*, 537 F.3d 439 (5th Cir.2008), and holding that the informal phone conversation between the SEC attorneys and Defendant did not constitute an "official proceeding."

On August 9, 2012, the government filed a superceding indictment (Dkt. No. 79), substituting for the dismissed obstruction of justice charge a new Count VII, now charging Defendant with false statement under 18 U.S.C. § 1001. In response to the superceding indictment, Defendant filed, on September 11, 2012, an emergency motion to continue the trial, indicating that he needed additional time to file a motion to dismiss the new Count VII. (*See* Dkt. No. 85.) On September 18, 2012, the court denied the motion to continue.

Just prior to the commencement of the trial, on October 15, 2012, Defendant moved to dismiss Count VII, in part on the ground that "[a] person has a right to make false statements to a person who calls unexpectedly on the phone and claims to be a government agent, but whose true identity is inherently uncertain, and whose true identity may be that of a fraudster." (Dkt. No. 127, Mot. Dismiss 3.)

On October 15, 2012, the court denied the motion to dismiss by a hand-written notation, indicating that "however, the court may require the government to prove that Defendant knew that he was speaking with a representative of the SEC at the time he made the false statements." (Dkt. No. 131.)

In response to the court's suggestion that it might require the government to prove that Defendant knew he was speaking to federal agents at the time of the May 12, 2008, phone call, the government

submitted a Pretrial Memorandum (Dkt. No. 136) contending that such a requirement would be improper. Citing *United States v. Duclos,* the government argued that to obtain a conviction for false statement under 18 U.S.C. § 1001 the government need only convince a jury beyond a reasonable doubt that Defendant "(1) knowingly and willfully, (2) made a statement, (3) in relation to a matter within the jurisdiction of a department or agency of the United States, (4) with knowledge of its falsity." 214 F.3d 27, 33 (1st Cir.2000). The government pointed out that these four elements were the sole requirements as articulated in the Pattern Jury Instructions for the First Circuit. Moreover, the government noted that the Supreme Court had held that, in a prosecution under § 1001, a defendant was *not* entitled to a jury instruction requiring the government to prove he had actual knowledge that his statements were within the jurisdiction of a federal agency, in the case of *United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984).

At trial, Defendant took the stand and testified that on May 12, 2008, he received the phone call from three individuals purporting to be from the SEC while he was at work, with no prior notice, and that he was unsure whether the people speaking to him were really from the SEC. In contrast to the government's testimony, Defendant denied he had ever received a prior phone message about the SEC's desire to speak with him, and he denied that the SEC officials ever told him they were investigating possible violations of securities law.[1] He stated repeatedly during his testimony that he did not trust that the people talking to him were really government agents.

In his testimony, Defendant also denied (contrary to government testimony) that the callers had ever specifically asked him whether he spoke to anyone ahead of time about purchasing Safeco stock. Defendant admitted that he deliberately avoided mentioning his uncle Peter Talbot during the call, because, again, he was unsure whom he was speaking to and he was worried about identity theft. Later, he said that he was afraid the callers might be trying to "scam" him. He admitted that at several points he did not tell the callers the truth, but stated that the reason for this was his uncertainty about who the callers were and his suspicion that the call was "a joke."

At the conclusion of the evidence, Defendant's counsel requested that the court instruct the jury that, in order to find Defendant guilty of false statement, the government needed to prove that Defendant knew or reasonably should have known that the persons he was speaking to were in fact government officials. The court, as noted above, declined to give the jury this instruction. The jury subsequently returned guilty verdicts on the false statement count, as well as the conspiracy and insider trading counts.

Following trial, Defendant moved for a new trial on the false statement count based on the fact that "over defendant's objection, the government was not required to prove any mens rea or scienter on the part of the defendant concerning the identity of the person(s) to whom he was speaking on the telephone at the time he made the alleged material false statement." (Dkt. No. 174.) This is the issue now before the court.

### III. *DISCUSSION*

Courts have repeatedly expressed concern about the potential misuse of the

---

1. The summary of Defendant's testimony is based on the undersigned's notes and an informal transcript. No official transcript has as yet been prepared.

federal false statement statute, recently described by one judge as "the ever-metastasizing § 1001." *United States v. Moore*, 612 F.3d 698, 702 (D.C.Cir.2010) (Kavanaugh, J., concurring). Then-Justice Rehnquist noted that the statute has the potential "to criminalize the making of even the most casual false statements so long as they turned out, unbeknownst to their maker, to be material to some federal agency function." *Yermian*, 468 U.S. at 82, 104 S.Ct. 2936 (Rehnquist, J., dissenting).[2]

 Here, the application of the statute is particularly disturbing. Defendant was called, out of the blue, in the middle of a work day by three officials of the SEC, who peppered him with questions of a financial nature. Defendant testified that he was unsure who the men really were and, partly because of this, dodged their questions and sometimes responded untruthfully. The call was unrecorded. Based on his responses during that 2008 phone call, Defendant now stands in jeopardy of a five-year prison sentence. More significantly for purposes of this memorandum, Defendant faces this potential sanction based on a verdict from a jury that was *not* instructed that, in order to obtain a conviction under § 1001, the government had to prove that Defendant knew, or at least reasonably should have known, that the individuals he was speaking to, when he made the false statements, really were government agents.

It is true that Defendant's testimony at times wobbled and suffered some inconsistencies. It is also true that the government's testimony, if accepted by the jury, would have amply justified a jury in concluding that Defendant, in fact, *did* know that the he was speaking to agents of the SEC at the time he made the false statements.[3] A defendant's entitlement to a particular jury instruction, however, does not need to be grounded in the *government's* evidence. The First Circuit has recently made this clear.

> A criminal defendant is entitled to an instruction on his theory of defense so long as the theory is legally sound and supported by evidence in the record. When a district court decides whether to give a requested instruction, it must take the evidence in the light most favorable to the defendant, without making credibility determinations or weighing conflicting evidence. The standard for 'plausibility' is quite low.

*United States v. Baird*, 712 F.3d 623 (1st Cir.2013)(citing *United States v. Powers*, 702 F.3d 1, 9 (1st Cir.2012) and *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir.2006)).

Since there is no question that the instruction here was supported by the evidence viewed favorably to Defendant, the only issue for the court is whether the instruction was "legally sound." *Id.*

The government takes the position that, no matter what the facts—even, presumably, where the government concedes that a defendant never knew he was speaking to a government agent—all that is required for a conviction under § 1001 is proof that the defendant knowingly and

---

2. A helpful article on the recent criticism of § 1001 may be found in the September/October issue of "The Champion," the journal of the National Association of Criminal Defense Lawyers. Paul Mogin, "The Willfulness Element of a False Statement Charge," CHAMPION, Sept.-Oct.2012, at 38.

3. The case, in fact, offers another example where over-zeal by the government generates subsequent headaches. It is more than likely, though not of course certain, that the jury would have convicted Defendant on this count even if the court had given Defendant's requested instruction.

willfully made a materially false statement, and that the statement (whether the defendant knew it or not) was "within the jurisdiction of a department or agency of the United States." *Duclos*, 214 F.3d at 33.

In taking this position the government relies primarily on the First Circuit's decision in *Duclos*, the Pattern Jury Instructions, and the Supreme Court's decision in *Yermian*. The *Duclos* decision merely recites the standard § 1001 elements, in a context where there was no question that the defendant knew he was communicating with an agency of the United States.

The authority of the Pattern Jury Instructions may be discarded quickly. As the First Circuit has repeatedly emphasized, "the Pattern Instructions, although often helpful, were not prepared or mandated by this court." *United States v. Gonzalez*, 570 F.3d 16, 28 (1st Cir.2009)(internal quotations omitted). They are "precatory, not mandatory." *United States v. Gomez*, 255 F.3d 31, 39 n. 7 (1st Cir.2001). Reliance on them "does not insulate a trial court from claims of instructional error." *United States v. Stefanik*, 674 F.3d 71, 77 (1st Cir.2012). Moreover, § 1001 prosecutions where a defendant offers colorable evidence that he did not know he was speaking to a government agent are likely to be rare. This court has an obligation to craft its instructions in response to the facts arising at trial, without simply relying on an ill-fitting model.

This leaves *Yermian*, which is far from helpful to the government. In that case, the defendant was hired by a private defense contractor, Gulton Industries. Because his position would give him access to classified material, he had to obtain a security clearance from the Department of Defense. In pursuit of this, the defendant filled out a security questionnaire and deliberately lied about a prior conviction and

prior employment. The notice of government involvement in *Yermian* far exceeded anything Defendant enjoyed in this prosecution. The form signed by the defendant in *Yermian* required him to sign "a certification stating that his answers were 'true, complete, and correct to the best of [his] knowledge' and that he understood 'that any misrepresentation or false statement . . . may subject [him] to prosecution under section 1001 of the United States Criminal Code.'" *Yermian*, 468 U.S. at 65, 104 S.Ct. 2936 (alterations in original). At trial, the defendant's "sole defense .. was that he had no actual knowledge that his false statements would be transmitted to a federal agency." *Id.* at 66, 104 S.Ct. 2936.

Justice Powell's majority opinion pointed out that the defendant offered this defense, in spite of the fact that the questionnaire made explicit reference to the "Defense Industrial Security Clearance Office" and informed him that his signature would give the Department of Defense permission to obtain his medical records. *Id.* at 66 n. 2, 104 S.Ct. 2936.

At trial, the district court in *Yermian* in fact *gave* the jury substantially the instruction requested by Defendant here—to wit, that in order to obtain a conviction the government had to prove that "the defendant knew or should have known that the information was to be submitted to a government agency." *Id.* at 67 n. 4, 104 S.Ct. 2936. Significantly, Justice Powell's five-justice majority opinion does not in any way criticize the trial judge's instruction. Indeed, the majority opinion made it clear that the government in *Yermian* never objected to the requirement that it prove that the defendant "should have known" of federal agency jurisdiction. *Id.* at 68 n. 5, 104 S.Ct. 2936.

The problem in *Yermian*, entirely different from this case, was that the defendant wanted *more*. He wanted the trial judge

to instruct the jury, in addition, that the government had to prove that the defendant actually knew that his false statements "were made in a matter within the jurisdiction of a federal agency." *Id.* at 66 n. 3, 104 S.Ct. 2936. The district court concluded that this was asking too much, but the Ninth Circuit reversed, holding that in order to obtain a conviction for false statement the government had to show that the defendant actually knew that the statement was "made in a matter within the jurisdiction of a federal agency." *Id.* at 67, 104 S.Ct. 2936. Like the trial judge, Justice Powell's majority opinion in *Yermian* concluded that this was asking too much and reversed the Ninth Circuit.

The issue in *Yermian* is entirely different from the issue here. *Yermian* addressed the question of *actual* "knowledge of federal agency jurisdiction." The government's obligation to prove that the defendant knew, or should have known, that he was transmitting information that would eventually go to a government agency was assumed. Indeed, it was this very fact that, according to Justice Powell, kept the application of the statute in *Yermian* from being "a trap for the unwary." *Id.* at 75 n. 14, 104 S.Ct. 2936.

Then–Justice Rehnquist's dissent for four members of the Court makes the inapplicability of *Yermian* to the issue now before this court abundantly clear. First, he and the other dissenters agreed with the Ninth Circuit that "actual knowledge of federal involvement" was a required element of a false statement charge. *Id.* at 83, 104 S.Ct. 2936. In strong language he pointed out the dangers of applying the statute to innocent or inadvertent conduct without this requirement. Towards the end of his dissent he expressed equally pungent dissatisfaction with the majority's failure to address "whether respondent Yermian received a proper jury instruc-

tion." *Id.* at 83, 104 S.Ct. 2936. Absent this, he says, lower courts will have to "improvise a new state-of-mind requirement, almost out of thin air, in order to avoid the unfairness of the Court's decision today." *Id.*

This improvisation is precisely what this court was required to perform in the unusual facts of this case. It erred in failing to do this. At a minimum, Defendant here was entitled to an instruction along the lines of the instruction given by the trial judge in *Yermian*, to the effect the government was required to prove that Defendant knew, or should have known, that his false statements were being made to a government official.

It is true that the First Circuit's decision in *United States v. Notarantonio*, 758 F.2d 777 (1985), contains *dicta* superficially inconsistent with the logic supporting this conclusion. In that case the defendant was charged with submitting false certifications of expenses in connection with loans made by the Rhode Island Industrial Facilities Corporation ("RIIFC") and guaranteed by the Small Business Administration ("SBA"). Ultimately, the defendant defaulted on his loan, and the SBA had to make good on its guarantee. The defendant argued that his false statements were made to RIIFC and not to the SBA and, therefore, were not within the "jurisdiction" of any federal agency. *Id.* at 787. The First Circuit pointed out the well-established principle under § 1001 that a false statement, to be actionable, does not need to be made directly to a federal agency or official. The decision does not suggest that the defendant in *Notarantonio* ever argued that he did not know about the involvement of the SBA. The issue now before this court simply did not arise.

Finally, this case does not fall under the umbrella of *Brogan v. United States*, 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830

(1998). In that case the defendant, a union official, was asked by a federal agent whether he had received a bribe and falsely responded, "No." *Id.* at 399, 118 S.Ct. 805. The issue in that case was not whether the defendant knew whether he was, in fact, talking to a federal agent—he did not contest this, and could not have—but whether an admittedly false "exculpatory no" can form the basis for a conviction under § 1001. *Id.* It is one thing to try to invoke "the 'spirit' of the Fifth Amendment" to attempt to block prosecution of conduct that clearly falls within the framework of a criminal statute. *Id.* at 404, 118 S.Ct. 805. It is quite another thing to bar a defendant from arguing to a jury that he had insufficient knowledge to form any criminal intent, or even to know he might be committing a crime. This unfairness is particularly acute when the statute itself requires that the criminal act be knowing and willful. *Brogan* addressed the argument that, though a crime was committed, it should be excused for policy reasons. This case presents the question whether a defendant may argue to the jury, with a proper instruction, that no crime was committed at all.

## IV. *CONCLUSION*

The implications of the government's argument here chill the blood. Someone receives a call, with no prior warning, in the middle of a work day. During this unrecorded call, individuals who purport to be government officials pepper him with questions. The recipient of the call, unsure who these questioners really are, dodges and prevaricates. Without even the opportunity to argue that he did not trust the identity of his interrogators and therefore chose not to be truthful, the recipient of the call faces a potential five-year prison sentence for making false statements.

A conviction in these circumstances would disregard the requirement of 18 U.S.C. § 1001 that a defendant's conduct be knowing and willful. More fundamentally, it would ignore the bedrock proposition that an individual should not be punished when he has done nothing wrong. For this reason, Defendant's Motion to Vacate Conviction and For New Trial on Count VII is hereby ALLOWED.

It is So Ordered.