**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward GALLOWAY, Defendant–Appellant.**

No. 00–5565.

United States Court of Appeals, Sixth Circuit.

Dec. 26, 2001.

Before RYAN and BATCHELDER, Circuit Judges; LAWSON, District Judge.*

LAWSON, District Judge.

The defendant, Edward Lee Galloway, appeals a sentence of 57 months in custody followed by three years of supervised release imposed upon his guilty-plea-based conviction of one count of possession of stolen goods from an interstate shipment, in violation of 18 U.S.C. § 659. Galloway claims that the lower court erred when calculating his sentencing guideline range by enhancing his offense level because the crime involved "more than minimal planning." *See* U.S.S.G. § 2B1.1(b)(4). We affirm.

## I.

The parties have each quoted the description of the offense from a portion of the Presentence Investigation Report, which is set forth below:

On or about September 29, 1999, a trailer load with assorted Hewlett Pack- ard computer products was stolen from the Fed Ex warehouse located at 3970 Delp, Memphis, TN. The trailer destination was the Fed Ex Hub where the computer equipment was to be shipped to several customers in several different states. The theft was witnessed by a Fed Ex employee, Wanda Smith. According to Smith, at approximately 11:00 p.m. a white tractor trailer pulled onto the lot at which time a male subject hooked the trailer up to the truck and drove away. When a Fed Ex driver arrived at the lot several hours later to pick up the trailer, the theft was discovered.

On or about October 4, 1999, a confidential informant (CI) contacted investigating officers and advised that Eddie Galloway wanted to sell the CI a trailer load of Hewlett Packard computers for $20,000. Galloway told the CI that the computers were on a TIPS rental trailer and that he needed to move the computers and get rid of the trailer which was parked at the Memphis Compress warehouse in the area of Florida and Dempster.

After surveillance was set up at the warehouse, the CI contacted Galloway and agreed to take the load if Galloway would bring it to him. Approximately one and a half hours later, a red tractor occupied by Ray Alexander and Eddie Galloway arrived at the location, hooked up the trailer, and left the scene. Alexander was driving. The truck was stopped by investigating officers at Brooks and Third where the trailer load of stolen equipment was recovered.

In a statement made on October 4, 1999, Eddie Galloway reported that on September 28, 1999, he met a Fed Ex

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

driver who told him that he knew where they could get a load of computers. The driver knew a girl who was supervisor at the Fed Ex warehouse on Delp. The driver paged Galloway on the following day and advised that the girl at Fed Ex had loaded the trailer. Galloway was given the location and number of the trailer. Galloway reported that although he had been told that is was an inside job, he was leery of moving the trailer. Galloway denied that the driver wanted Galloway to sell the computers and reported that the driver wanted the trailer dropped off. Galloway agreed to move the trailer. He ran into Alexander at Round Town Tire and asked him to move the trailer. Galloway reported that Alexander asked if the load was stolen at which time Galloway told him that he did not know what was on the truck. Galloway stated that he did not tell Alexander the load was stolen because he was afraid that he might not move it if he knew what was on the trailer. Galloway denied knowing the Fed Ex driver's name.

In a statement made on October 5, 1999, Ray Alexander reported that he was approached by Galloway earlier that day and asked to move a trailer. Galloway's truck was reportedly in the shop. Alexander denied any knowledge of the trailer having been stolen.

(Presentence Report at 3–4, J.A. at 48–49).

At the sentencing hearing, the lower court overruled the defendant's objection to the two-level upward adjustment for more than minimal planning based on her view of the defendant's overall conduct. She relied on the facts that the defendant made advance arrangements with a Fed Ex employee to learn the time and location of the delivery of the trailer loaded with computers, that he arranged to receive a call on his pager when the shipment was in place and then used his tractor to steal the trailer himself, that he moved the trailer to a remote location, that he recruited another person (Ray Alexander) to move the trailer a second time when he was ready to dispose of the stolen goods, and that the events occurred over a period of several days.

The court found that the defendant's conduct in committing the crime involved more than minimal planning and, pursuant to U.S.S.G. § 2B1.1(b)(4), justified a two-level upward adjustment to the offense level. The resulting total offense level of thirteen, when entered in the sentencing grid with the defendant's criminal history category of VI, yielded a custody range of 33 to 41 months, from which the court departed upward in imposing the 57–month sentence.[1]

The defendant filed a timely notice of appeal.

## II.

### A.

The lower court's factual findings when applying the Sentencing Guidelines are reviewed under the "clearly erroneous" standard. *United States v. Ellerbee*, 73 F.3d 105, 107 (6th Cir.1996). A finding of fact will be considered clearly erroneous only when the reviewing court, after consideration of the entire record, comes to a definite and firm conviction that a mistake

1. The sentencing judge departed upward from the sentencing guideline range because she considered that the defendant's 21 criminal history points resulting from applying the Sentencing Guideline formula to the defendant's history of convictions under-represented his rather prodigious criminal record. The defendant does not challenge this upward departure on appeal.

has been made. *United States v. Latouf,* 132 F.3d 320, 331 (6th Cir.1997).

We have held that the district court's legal conclusions are reviewed *de novo. Id.* However, the relevant sentencing statute, 18 U.S.C. § 3742(e), requires the reviewing court to "give due deference to the district court's application of the guidelines to the facts." Just how much "deference that is due depends on the nature of the question presented." *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

### B.

After this case was briefed and argued, the Supreme Court decided the case of *Buford v. United States,* 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001), which dealt with the standard of review that appellate courts should use when reviewing sentencing guideline decisions of the district courts. The Supreme Court held that where the question of the proper application of a sentencing guideline provision "grows out of, and is bounded by, case-specific detailed factual circumstances," a deferential standard of review should be employed by the reviewing court not only to findings of fact, but also to the application of law to fact. 121 S. Ct. at 1281. The Supreme Court was reviewing the sentencing court's determination of when prior sentences are "related" for the

purpose of applying the career offender provisions of the sentencing guidelines. We find that deciding whether the defendant's conduct involved more than minimal planning is also the kind of fact-bound application of law to fact that calls for a deferential standard of review because of "the relative institutional advantages enjoyed by the district court in making the type of determination at issue." *Id.* at 1280.

The "clearly erroneous" review standard is deferential, *United States v. Hurst,* 228 F.3d 751, 756 (6th Cir.2000), and we apply that standard in this case to the lower court's factual determinations. Following *Buford* and the plain language of 18 U.S.C. § 3742(e), we also apply this deferential review standard to the sentencing court's application of law to fact. However, when the question under review consists solely of a legal determination involving undisputed facts, we will review the decision of the sentencing court *de novo. United States v. Jeter,* 191 F.3d 637, 638 (6th Cir.1999).

### III.

The defendant was indicted for and convicted of violating 18 U.S.C. § 659, which prohibits, *inter alia,* knowingly possessing stolen goods which constitute part of an interstate shipment of freight.[2] In order to determine the appropriate offense level,

---

**2.** The statute provides:

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an inter-

state or foreign shipment of freight, express, or other property; or

Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen; or

Whoever embezzles, steals, or unlawfully takes, carries away, or by fraud or deception obtains with intent to convert to his own use any baggage which shall have come into the possession of any common carrier for transportation in interstate or foreign commerce or breaks into, steals, takes, carries away, or conceals any of the

the sentencing court properly turned to U.S.S.G. § 2B1.1.[3] Subparagraph (4) of that section provides:

(4) If the offense involves more than minimal planning, increase by 2 levels.

The application note relevant to this section provides a detailed gloss on the manner in which "more than minimal planning" may be determined:

"More than minimal planning" means more planning than is typical for commission of the offense in a simple form.

contents of such baggage, or buys, receives, or has in his possession any such baggage or any article therefrom of whatever nature, knowing the same to have been embezzled or stolen; or

Whoever embezzles, steals, or unlawfully takes by any fraudulent device, scheme, or game, from any railroad car, bus, vehicle, steamboat, vessel, or aircraft operated by any common carrier moving in interstate or foreign commerce or from any passenger thereon any money, baggage, goods, or chattels, or whoever buys, receives, or has in his possession any such money, baggage, goods, or chattels, knowing the same to have been embezzled or stolen-

Shall in each case be fined under this title or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both....

18 U.S.C. § 659.

**3.** The applicable Sentencing Guideline provision states:

2B1.1. LARCENY, EMBEZZLEMENT, AND OTHER FORMS OF THEFT; RECEIVING, TRANSPORTING, TRANSFERRING, TRANSMITTING, OR POSSESSING STOLEN PROPERTY

(a) Base Offense Level: 4

(b) Specific Offense Characteristics

(1) If the loss exceeded $100, increase the offense level as follows:

Loss (Apply the Greatest) Increase in Level

(A) $100 or less — no increase
(B) More than $100 — add 1
. . .

"More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

(J) More than $120,000 — add 9
. . .
(U) More than $80,000,000 — add 20.

(2) If the theft was from the person of another, increase by 2 levels.

(3) If (A) undelivered United States mail was taken, or the taking of such item was an object of the offense; or (B) the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, and the offense level as determined above is less than level 6, increase to level 6.

(4)(A) If the offense involved more than minimal planning, increase by 2 levels; or

(B) If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 4 levels.

(5) If the offense involved an organized scheme to steal vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to level 14.

(6) If the offense—

(A) substantially jeopardized the safety and soundness of a financial institution; or

(B) affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense,

increase by 4 levels. If the resulting offense level is less than level 24, increase to level 24.

(7) If the offense involved misappropriation of a trade secret and the defendant knew or intended that the offense would benefit any foreign government, foreign instrumentality, or foreign agent, increase by 2 levels.

(8) If the offense involved theft of property from a national cemetery, increase by 2 levels.

. . .

In a commercial burglary, for example, checking the area to make sure no witnesses were present would not alone constitute more than minimal planning. By contrast, obtaining building plans to plot a particular course of entry, or disabling an alarm system, would constitute more than minimal planning.

In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning. However, repeated instances of such thefts on several occasions would constitute more than minimal planning. Similarly, fashioning a special device to conceal the property, or obtaining information on delivery dates so that an especially valuable item could be obtained, would constitute more than minimal planning . . . .

U.S. Sentencing Guideline Manual § 1B1.1 cmt. n. 1(f) (Nov.2000).

The defendant argues that the manner in which he committed his crime entailed only the bare essentials of the offense. He contends that he merely stole the trailer full of computers, transported it to a secluded place, and then contacted a buyer in an effort to "fence" the goods. This conduct, he states, is the crime in its "simplest form" and involved only minimal planning on his part.

A "more than minimal planning" enhancement, the defendant asserts, is applied only to sophisticated crimes or offenses involving repeated acts over an extended period of time. The defendant cites *United States v. Cropper*, 42 F.3d 755 (2d Cir.1994), in support of that proposition. In that case, which is readily distinguishable from the one now before the Court, the defendant broke into a warehouse and stole boxes of computer components. Because he was a former employee of the warehouse, he had keys in his possession that allowed him to gain entry. He used gloves which he found on the premises to conceal his fingerprints, and after the theft he removed the equipment from the original packing boxes, loaded it into his car, drove some of the equipment to his house, and then drove the rest of it thirty miles away to give the equipment to his present employer to settle a debt. In reversing the sentencing court's finding of more than minimal planning, the court of appeals found that the defendant's conduct was "a spontaneous, reckless caper." *Id.* at 759.

It was a simple—one is tempted to say simple-minded—theft. While he was driving by the warehouse, Cropper decided, on an impulse, to break in and recover what Guaranteed Air Freight "owed" him. He drove up to a well-lighted warehouse in a conspicuous yellow taxi cab that was too small to carry the boxes of computer components he stole, delaying him while he unpacked the components before he could load them into the cab. If this scenario suggests planning at all, the best it could aspire to be would be "minimal," and certainly not "more than minimal."

*Id.* at 758.

This Court has not confined the application of the "more than minimal planning" enhancement only to sophisticated or protracted criminal undertakings. In *United States v. Moore*, 225 F.3d 637, 642 (6th Cir.2000), we noted that "[i]t is not necessary that a crime suggests planning in its most deliberative form; rather, it is sufficient if the evidence suggests merely that the crime was not committed in its simplest form." And in *United States v. Milligan*, 17 F.3d 177 (6th Cir.1994), we held:

"More than minimal planning" exists in situations involving: (1) more planning than is typical for commission of the

offense in simple form; (2) significant affirmative steps were taken to conceal the offense; or (3) repeated acts over a period of time, unless it is clear that each instance was purely opportune. *Id.* at 184. *See also Ellerbee,* 73 F.3d at 108 (more than minimal planning must be "something more than the crime in its simplest form. . . . [It] can be deduced by more planning than is typical, repeated acts, and steps to conceal the crime.").

The district court found that the defendant himself was involved in the theft of the goods, and was not merely in possession of stolen property. The theft was accomplished with the cooperation of someone "on the inside"—a Fed Ex employee who obtained information about the timing and location of the shipment and passed that information on to the defendant using a pager; and the defendant made further arrangements, including the recruitment of another driver, to conceal, move and dispose of the goods.

Although these facts do not compel a finding of "more than minimal planning" as a matter of law, they certainly do not preclude it. The defendant argues that merely recruiting another participant to assist in the crime does not support a more-than-minimal-planning finding, and his argument has some merit. *See United States v. Phath,* 144 F.3d 146, 149–51 (1st Cir.1998). However, the sentencing judge is entitled—indeed is obliged—to consider the defendant's conduct in its totality. If the lower court's decision is within the "zone of choice," *see Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc) (applying deferential standard of review to decision of administrative agency), in which the decision-maker could reach either of two conclusions in light of the evidence, that decision is entitled to due deference and the reviewing court should not interfere.

Under the specific facts of this case, we cannot say that the lower court misapplied U.S.S.G. § 2B1.1(b)(4)(A) because the finding that the defendant did more than merely possess stolen goods but rather made plans in advance to steal and dispose of them, is supported by substantial evidence in the record.

## IV.

Because the lower court's determination that the defendant's conduct in committing the offense of conviction involved more than minimal planning was not clearly erroneous, the judgment of the in which it district court applied a two-level upward adjustment to the defendant's base offense level is

**AFFIRMED.**